**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                              :
LARRY WILSON,                 :
                              :   CIVIL ACTION NO. 04-1523 (MLC)
      Plaintiff,              :
                              :   MEMORANDUM OPINION
      v.                      :
                              :
NEW JERSEY STATE POLICE,      :
et al.,                       :
                              :
      Defendants.             :
_____:
```

**COOPER, District Judge**

The defendants, State of New Jersey, New Jersey State Police ("NJSP"), Superintendent of the NJSP ("Superintendent"), and New Jersey State Troopers Patrick Callahan ("Callahan") and Robert Sagen ("Sagen") ("the Trooper Defendants") (collectively, "the defendants"), move to dismiss the claims in the complaint filed by the plaintiff, Larry Wilson ("the plaintiff"), with the exception of the claims asserted against the Trooper Defendants under 42 U.S.C. § ("Section") 1983 in their individual capacities, for alleged violations of the (1) Fourth Amendment for false arrest and false imprisonment, and (2) Fourteenth Amendment for selective enforcement, for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Dkt. entry no. 24.) The Court, for the reasons stated herein, will grant the motion.

## BACKGROUND

The complaint alleges that "[o]n January 22, 1998, shortly after 7:00 a.m., plaintiff, Larry Wilson, a dark-skinned native of The Nation of Jamaica, West Indies, was operating a car, heading west on Route 78, in the vicinity of Bloomsbury, [New Jersey], on a trip from New York City to Virginia." (Compl., at ¶ 11.)  The plaintiff's car "was stopped by defendant Patrick Callahan, a New Jersey State Trooper employed by defendant New Jersey State Police.  Defendant Patrick Callahan called for back up, and defendant Robert Sagen responded to the scene."  (Id. at ¶ 12.)  The plaintiff was arrested and "eventually convicted of illegal possession of drugs with the intent to distribute," and sentenced to four years in a New Jersey State Prison.  (Id. at ¶ 14-16.)[1]  The plaintiff remained in custody "for a period of more than a year."  (Id. at ¶ 18.)  "As a result of [the plaintiff's] . . . arrest and conviction, a detainer was placed upon [him] by the Immigration and Naturalization Service[, and he] was placed in removal proceedings and ordered removed from the United States."  (Id. at ¶ 17.)[2]

---

[1] Although the complaint does not explicitly allege that the Trooper Defendants seized illegal narcotics during this traffic stop, it may reasonably be inferred by the plaintiff's drug conviction that this is what occurred.

[2] The plaintiff was deported on September 4, 2003.  (Compl., at ¶ 4.)

2

The plaintiff alleges that the traffic stop and arrest occurred pursuant to the practice of "racial profiling" in which "dark-skinned persons are singled-out by the police and arrested for the purpose of charging them with a violation."  (Id. at ¶ 13.)  The plaintiff states that "[w]hile he was imprisoned, the State of New Jersey acknowledged that [he] had been detained, charged and convicted wrongfully, and in violation of the law," and released him from custody.  (Id. at ¶ 19-20.)  The Honorable Ann Bartlett, J.S.C., upon motion by the State of New Jersey, entered an order on May 13, 2003, vacating Wilson's conviction and dismissing the indictment against him.  (Dkt. entry no. 24, 4-11-06 Aff. of Brian Flanagan ("Flanagan Aff."), at ¶ 3 & Ex. 3; Compl., at ¶ 19.)  The State, in moving for this relief as to the plaintiff and other criminal defendants, stated that "one could argue and a conclusion could be drawn by the Court that colorable issues of racial profiling" existed.  (Flanagan Aff., at ¶ 3 & Ex. 4, Aff. of Paul H. Heinzel in Support of Motion to Vacate Convictions ("Heinzel Aff."), at ¶ 4.)  The State moved to vacate the convictions and dismiss the indictments against the criminal defendants in those cases "[r]ather than litigating the issues of selective enforcement, whether generally or specifically, in the interests of justice."  (Heinzel Aff., at ¶ 5.)

The plaintiff asserts that this practice of "racial profiling," "including the policy of making 'profile stops', is racially motivated and chills and discourages people of color

3

such as [the] plaintiff from using Route 78, Route 78 facilities and accommodations, and facilities and accommodation accessible via Route 78." (Compl., at ¶ 22.) The plaintiff brought this action on March 31, 2004, claiming that the State's discriminatory enforcement of the traffic laws, and his subsequent arrest and conviction, violated his rights under the United States Constitution and New Jersey law, including the New Jersey Law Against Discrimination ("NJLAD"). (Id. at ¶¶ 14, 24.) Specifically, the plaintiff asserts claims under 42 U.S.C. §§ ("Section[s]") 1983, 1985(2) and (3), and 1988(a) and (b) for alleged violations of rights secured to him by the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. (Id. at ¶ 1.) The plaintiff also brings supplemental state law claims for assault and battery, false arrest, false imprisonment, malicious prosecution, emotional harm, and mistaken incarceration under N.J.S.A. § 52:4C-1, et seq. (Id. at ¶¶ 28-42.)

The complaint asserts claims against the Trooper Defendants in their individual and official capacities. (Id. at ¶ 7.) The Superintendent is sued individually and in his official capacity as an agent of the State and the NJSP. (Id. at ¶ 8-9.) John Does 6-10 are sued individually and officially as consultants or officials also responsible for supervision, training, and compliance with NJSP standards. (Id. at ¶ 10.)

The plaintiff seeks compensatory damages, punitive damages, attorney's fees, and injunctive relief for all but one count of the complaint. (Id.)[3]  With respect to injunctive relief, the plaintiff requests that the Court order the NJSP to: (1) cease racially selective enforcement of the traffic laws on Route 78, (2) maintain records of all traffic stops indicating the reason for the stop and the race of the occupants, (3) install video and voice equipment in all NJSP vehicles to record the relevant details of each traffic stop, (4) afford a stopped motorist the right to obtain a copy of these records, (5) establish grievance procedures to challenge police conduct that may have been motivated by race, (6) screen potential members of the NJSP for racial bias, and (7) require all NJSP troopers to participate in regular and recurring training to ensure that the troopers do not act on bias based on race or national origin.  (Id. at 6-15.)

The defendants originally moved to dismiss the complaint on August 17, 2004. (Dkt. entry no. 7.)  The Court, by order entered on July 25, 2005, stayed the action pending developments in the Third Circuit in Gibson v. State of New Jersey.  (Dkt. entry no. 16.)  The Third Circuit issued a decision in Gibson on June 14, 2005, and the Court extinguished the stay on October 7, 2005.  (Dkt. entry no. 17.)  The defendants again moved to

_____

[3] The claim under N.J.S.A. § 52:4C-1, et seq., is limited to a request for "an amount not less than $20,000 for each year of his incarceration."  (Compl., at ¶ 44.)

dismiss the complaint on November 10, 2005, but, at the request of the defendants, the Court stayed the action pending the resolution of the Petition for a Writ of Certiorari in <u>Gibson</u>. (Dkt. entry nos. 19, 20.)  The United States Supreme Court denied the petition on March 20, 2006, and the Court extinguished the stay and directed the plaintiff to proceed with prosecution of the action on April 5, 2006.  (Dkt. entry no. 21, 3-27-06 Defs. Ltr.; Dkt. entry no. 22.)  The defendants filed the current motion to dismiss the complaint on April 11, 2006.  (Dkt. entry no. 24.)

<u>**DISCUSSION**</u>

**I.    Standard Of Review For A 12(b)(6) Motion**

A complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  On a motion to dismiss, the Court must accept as true all of the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff.  <u>Doe v. Delie</u>, 257 F.3d 309, 313 (3d Cir. 2001).  But a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss.  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (citation omitted).  "Dismissal of claims under Rule 12(b)(6) is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim upon which relief may be granted."  <u>Jakomas v. McFalls</u>, 229 F.Supp.2d 412, 419 (W.D. Pa. 2002).

The Court, when considering a motion to dismiss, may generally not "consider matters extraneous to the pleadings." <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d at 1426. However, if the Court exercises discretion and permits a party to present matters outside the pleadings, the Court must (1) convert the motion to dismiss into one for summary judgment, and (2) allow the parties a reasonable opportunity to present all material pertinent to such a motion under Rule 56.  Fed.R.Civ.P. 12(b). An exception to this general rule is that the Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment.  <u>Angstadt v. Midd-West Sch. Dist.,</u> 377 F.3d 338, 342 (3d Cir. 2004) (citation omitted).[4]

The defendants, in moving to dismiss under Rule 12(b)(6), include an April 11, 2006 Affidavit from Brian Flanagan, with the following exhibits: (1) 4-26-02 Reasons for Sentencing; (2) Department of Corrections "Offender Details"; (3) Order of the Honorable Ann R. Bartlett, J.S.C. vacating Wilson's conviction, dated May 13, 2003; (4) Transcript of hearing before Judge

---

[4] "The rationale underlying this exception is that the primary problem raised by considering documents outside the complaint — lack of notice to the plaintiff — is dissipated where the plaintiff has actual notice and has relied upon the documents in framing the complaint." <u>Jones v. Intelli-Check, Inc.</u>, 274 F.Supp.2d 615, 625-26 (D.N.J. 2003) (citations omitted).

Bartlett on May 12, 2003, and Certification of Deputy Attorney General Paul Heinzel, filed in the Barisonek cases; and (5) Memorandum Opinion in Lane v. Whitman, No. 02-4290 (JCL), slip op. (D.N.J. Feb. 18, 2004). (Dkt. entry no. 24, 4-11-06 Flanagan Aff.) The Court will consider the documents provided by the defendants as they are either relied upon in the complaint or matters of public record.

The plaintiff, in opposition to the motion to dismiss, submitted a Certification of Benjamin Levine with the following exhibits: (1) Interim Report of the State Police Review Team Regarding Allegations of Racial Profiling; (2) New Jersey Senate Judiciary Committee's Investigation of Racial Profiling and the New Jersey State Police: Overview and Recommendations, dated May 31, 2001; (3) New Jersey Legislative Black and Latino Caucus, A Report on Discriminatory Practices Within the New Jersey State Police, dated August 1999; (4) Minority Report Supplementing the Report of the New Jersey Senate Judiciary Committee's Investigation of Racial Profiling and the New Jersey State Police; (5) Joint Application for Entry of Consent Decree and Consent Decree in the matter of United States of America v. State of New Jersey; (6) Order Vacating Conviction and Dismissing Indictment dated May 12, 2003, signed by Judge Bartlett; (7) Excerpts of Debra L. Stone's deposition transcript dated February 13, 2001; and (8) Excerpts of Sergeant Bellaran's testimony

8

before the Senate Judiciary Committee Public Hearing on April 9, 2001.  (Dkt. entry no. 10, 10-12-04 Levine Cert.)[5]  Although the documents submitted by the plaintiff appear to be matters of public record and related to the State's efforts to remedy the racial profiling practices, the Court finds that only the May 12, 2003 order vacating Wilson's conviction is relevant to the issues presented in this motion.

## II.  Analysis

The defendants move to dismiss on seven grounds.  They argue that the (1) Section 1983 claims against the (a) State of New Jersey and NJSP, and (b) Superintendent and Trooper Defendants in their official capacities, must fail because they are not "persons" within the meaning of the statute, (2) federal claims against the Superintendent and Trooper Defendants are impermissibly based on a theory of respondeat superior, (3) state law tort claims must be dismissed for failure to comply with the notice requirements of the New Jersey Tort Claims Act ("NJTCA"), (4) NJLAD claim is barred by the statute of limitations, (5) malicious prosecution claim is subject to dismissal because he cannot establish the essential elements of the claim, (6) state

_____

[5] The plaintiff opposes the motion to dismiss by largely incorporating and relying upon his brief and supporting certification filed in October 2005 in opposition to the first motion to dismiss.  (See dkt. entry no. 28, Pl. Ltr. Opp. Br., at 1 (stating "plaintiff will rely primarily on his brief which is already part of the court's file, having been submitted in October 2005, together with appropriate exhibits").)

statutory claim for mistaken imprisonment is deficient for improper venue and failure to name the proper defendant, and (7) claim for injunctive relief fails because the plaintiff can neither demonstrate irreparable harm nor establish the probability of success on the merits.  (Defs. Br., at 12-28.)

**A.   Claims for Injunctive Relief**

The defendants contend that the plaintiff cannot demonstrate that he is entitled to injunctive relief because he cannot show (1) irreparable harm, or (2) a likelihood of success on the merits.  The Court need not address this contention because, as the plaintiff's counsel indicated at oral argument, the plaintiff has withdrawn his claim for injunctive relief.  (Dkt. entry no. 33, Minute Entry for 8-2-06 Hearing.)

**B.   Federal Claims Against All Defendants In Official Capacities**

The defendants argue that they are not subject to suit under Section 1983 because they are not "persons" within the meaning of the statute.[6]  The Court finds that the plaintiff cannot maintain a cause of action under Section 1983 against the State of New Jersey, NJSP, or the Superintendent and the Trooper Defendants in their official capacities.

---

[6] Although the plaintiff also brings claims under Section 1988(a) and (b), those sections pertain only to the law to be applied in civil rights actions and attorney's fees respectively. See 42 U.S.C. § 1988(a) & (b).  As such, the Court will analyze the plaintiff's claims under Sections 1983 and 1985.

1.   State of New Jersey & NJSP

To properly assert a Section 1983 claim, the plaintiff must allege (1) a violation of a right secured by the Constitution and laws of the United States, and (2) that the alleged deprivation was committed by a "person" acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).  Although a plaintiff must allege that his or her rights were violated by a "person" acting under color of state law, "neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  Also, if a subdivision of the state acts as an alter ego or an "arm" of the state, the subdivision of the state is not a "person" under Section 1983.  Fitchik v. N.J. Transit Rail Operations, 873 F.2d 655, 658-59 (3d Cir. 1989)  The NJSP is an arm of the State of New Jersey and is not subject to suit under Section 1983.  See Longoria v. State of N.J., 168 F.Supp.2d 308, 315-16 (D.N.J. 2001) (applying Fitchik factors and concluding that NJSP is arm of State).  Therefore, neither the State of New Jersey nor the NJSP may be sued under Section 1983.[7]

---

[7] Although not specifically mentioned by the defendants, this analysis of the word "person" would apply to the plaintiff's Section 1985 claims as well.  See Flesch v. E. Pa. Psych. Inst., 34 F.Supp. 963, 975 (E.D. Pa. 1977) (noting that "[a]lthough the Supreme Court has not decided the issue, courts are in agreement" that analysis of word "person" for purposes of Section 1983 applies equally to use of word "person" in Section 1985); see, e.g., Santiago v. N.Y. St. Dep't of Corr. Servs., 725 F.Supp. 780, 783-84 (S.D.N.Y. 1989) (explaining "principle that 'under

      2.   The Superintendent and the Trooper Defendants in their official capacities

"Because a suit against an officer in his or her official capacity is effectively a suit against the state itself, only prospective injunctive relief is available against such defendants, absent a waiver by the state of its sovereign immunity." <u>Longoria</u>, 168 F.Supp.2d at 318.  Here, the plaintiff has withdrawn his claims for injunctive relief, and his claims for damages are not cognizable against the Superintendent and the Trooper Defendants in their official capacities.  Accordingly, all of the plaintiff's federal claims against the Superintendent and the Trooper Defendants in their official capacities will be dismissed.

**C.  Federal Claims Against the Superintendent in Individual Capacity**

The defendants also claim that the federal claims against the Superintendent must be dismissed because they are based solely on a theory of respondeat superior.  (Defs. Br., at 12-13.)  The defendants assert that the plaintiff has "alleged no personal involvement whatsoever on the part of [the Superintendent] in the violation of his constitutional rights." (<u>Id.</u> at 13.)  Also, the defendants point out that the plaintiff has not identified which Superintendent of NJSP he claims to be

_____

[Sections] 1983 and 1985[,] the term 'persons' has the same meaning" and concluding that state agency was not a "person" under Section 1985), <u>rev'd on other grounds</u>, 945 F.2d 75 (2d Cir. 1991).

liable.  (Id.)  The Court will dismiss the federal claims against the Superintendent.

A supervisory official acting under color of state law "may only be sued in his individual capacity under [Sections] 1981 and 1983 where the individual defendant is 'personally involved in the alleged wrongs.'"  Longoria, 168 F.Supp.2d at 317 (quoting Santiago v. City of Vineland, 107 F.Supp.2d 512, 540 (D.N.J. 2000)).  Thus, supervisory liability under Section 1983 "cannot be predicated solely upon a theory of respondeat superior."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  The plaintiff, to properly allege a supervisor's "personal involvement" must allege with "appropriate particularity" that the supervisor (1) personally directed the allegedly unconstitutional conduct, or (2) had actual knowledge and acquiesced in the conduct.  Id.  As such, a plaintiff's mere allegations that a supervisory official was "responsible for supervising" the other defendants is insufficient to state a claim for supervisory liability under Section 1983.  Id. at 1208.

The complaint alleges only that the Superintendent was (1) the "superior" of the Trooper Defendants, (2) "responsible for the[ Trooper Defendants'] training, supervision and conduct[,]" and (3) "responsible for enforcing the regulations of the [NJSP] and for ensuring that the [NJSP] personnel obey the laws of the State of New Jersey and of the United States."  (Compl., at 9.)

13

The plaintiff asserts that it "is inapt on the face of [the] complaint that the arresting officers were trained by their superiors in the techniques of racial profiling, and that such policy was done as a matter of state policy."  (Pl. 10-7-04 Br., at 16.).  However, despite this contention, the complaint contains no allegations that the Superintendent personally directed the Trooper Defendants to carry out an allegedly discriminatory arrest, or knowingly acquiesced in their conduct. Thus, the plaintiff is attempting to impose liability on the Superintendent based solely on his supervisory status, which is an impermissible basis to assert a claim under Section 1983.[8]

### D.   The Remaining Federal Claims

The plaintiff, in the introductory section of the complaint (discussing jurisdiction), alleges violations of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. (Compl., at ¶ 1.)  Although these amendments are mentioned in the

---

[8] The plaintiff's reliance on <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658 (1978) and <u>Canton v. Harris</u>, 489 U.S. 378 (1989) in support of his contention that he has not pled a respondeat superior claim against the Superintendent is misplaced.  Both <u>Monell</u> and <u>Canton</u> addressed "the contours of <u>municipal liability</u>" in the context of Section 1983 claims.  <u>Canton</u>, 489 U.S. at 386-87 (emphasis added); <u>Monell</u>, 436 U.S. at 690-95.  Moreover, unlike the state defendants here, municipalities are considered "persons" under Section 1983.  <u>Monell</u>, 436 U.S. at 690.
The Court notes the plaintiff's failure to identify the particular Superintendent of NJSP that allegedly participated in the wrongful conduct would constitute an additional basis for dismissal.

14

first paragraph of the complaint, the remainder of the complaint
fails to assert how the allegedly wrongful conduct violates the
First, Fifth, Sixth, and Eighth Amendments.  Therefore, the Court
will dismiss the complaint insofar as it asserts claims under the
First, Fifth, Sixth, and Eighth Amendments.

      1.   First Amendment

The plaintiff's First Amendment claim apparently arises out
of his January 1998 traffic stop.  The plaintiff alleges merely
that "[t]he pattern and practice of discrimination in the
enforcement of traffic laws on Route 78, including the policy of
making 'profile stops', is racially motivated and chills and
discourages people of color such as [the] plaintiff from using
Route 78, Route 78 facilities and accommodations, and facilities
and accommodations accessible via Route 78."  (Compl., at ¶ 22.)
This allegation is insufficient to assert a viable claim under
the First Amendment.

Constitutional protection under the First Amendment "is
afforded not only to speaking and writing, but also to some
nonverbal acts of communication, viz. 'expressive conduct' (or
'symbolic speech')."  <u>Tenafly Eruv Ass'n v. Borough of Tenafly</u>,
309 F.3d 144, 158 (3d Cir. 2002).  Such conduct is
constitutionally protected when it is "sufficiently imbued with
elements of communication to fall within the First Amendment's
scope."  <u>Id.</u>  Conduct is sufficiently imbued with elements of

communication if there is "an intent to convey a particularized message" and if in the surrounding circumstances "the likelihood was great that the message would be understood by those who viewed it."  Id.

The plaintiff does not allege any speech or expressive conduct that the defendants have unconstitutionally infringed. Also, although the plaintiff claims that the defendants' racial profiling will "chill and discourage" him (and others) from driving on Route 78 or accessing facilities and accommodations on and off of Route 78, he has not alleged that the defendants "chilled" any speech or conduct intended to communicate.  The plaintiff has also not alleged that the defendants use discriminatory law enforcement procedures to silence protected speech.

    2.    Fifth Amendment

The Fifth Amendment provides, inter alia, that no person "shall be deprived of life, liberty, or property without due process of law."  Id.  However, the rights provided by the Fifth Amendment do not apply to the actions of state officials; rather, "[t]he limitations of the Fifth Amendment restrict only federal governmental action."  Nguyen v. U.S. Cath. Conf., 710 F.2d 52, 54 (3d Cir. 1983).  Therefore, the plaintiff cannot maintain a Fifth Amendment claim.[9]

---

[9] If the plaintiff is asserting a violation of his Fifth Amendment right against self-incrimination, such claim is not discernable from the allegations of the complaint.  Further, to

### 3. Sixth Amendment

The Sixth Amendment provides, <u>inter</u> <u>alia</u>, that a defendant "be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the assistance of counsel for his defense." U.S. Const. amend. VI. The plaintiff fails to assert any allegations that relate to these guarantees.

### 4. Eighth Amendment

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The plaintiff alleges only that he was (1) arrested, convicted, and placed in custody for a period of more than a year, and (2) removed from the United States by the Immigration and Naturalization Service. (Compl., at ¶¶ 13-18.) The plaintiff has not supported his Eighth Amendment claim with any allegations as to any possible "cruel and unusual punishments" inflicted while in prison. The plaintiff has not alleged that he was "depriv[ed of] the minimal civilized measure of life's necessities" while in prison. <u>Hudson v. McMillian</u>, 503 U.S. 1, 8-9 (1992). Furthermore,

> [t]o the extent Plaintiff seeks damages for his post-conviction incarceration, the Eighth Amendment provides

---

the extent that the plaintiff asserts an equal protection violation, such claim is properly analyzed under the Fourteenth Amendment.

> no basis for relief.  The Eighth Amendment does not
> provide a cause of action for every criminal defendant
> whose conviction and sentence have been invalidated on
> appeal.  Rather, the Eighth Amendment serves to protect
> prisoners, entrusted to the custody of the State, from
> abuse by their jailers.

Lane v. Whitman, No. 02-4290 (JCL), slip op., at 12 (Feb. 20, 2004).  The plaintiff fails to allege any violations of the conditions of his confinement, or the treatment he received while in prison.  Also, the plaintiff has not asserted that any of the named defendants had any control over his conditions of confinement after he was sentenced.  Accordingly, the allegations do not support a cognizable Eighth Amendment violation.[10]

**E.    The New Jersey Common Law Tort Claims**

The defendants contend that the New Jersey common law tort claims for false arrest, false imprisonment, assault and battery, and emotional distress, must be dismissed because the plaintiff failed to "comply with the mandatory notice requirements of the [NJTCA]."  (Defs. Br., at 14-17.)  The plaintiff asserts that the "defendants have misconceived the present claim as a simple tort action rather than as a claim for a violation of [the] plaintiff's constitutional rights."  (Pl. 10-7-04 Br., at 17.) As such, the plaintiff argues that there is no requirement for a

---

[10] The plaintiff has not cited to any cases indicating that the Eighth Amendment is applicable to deportation.  See Browning-Ferris Indus. v. Kelco Disposal, Inc., 492 U.S. 257, 263 (1989) (citing Fong Yue Ting v. United States, 149 U.S. 698, 730 (1893) for proposition that Eighth Amendment "inapplicable to deportation because deportation is not punishment for a crime").

NJTCA notice in a Section 1983 action.  (<u>Id.</u>)  The Court finds that, to the extent that the plaintiff has asserted New Jersey state common law claims for false arrest, false imprisonment, assault and battery, and emotional distress, the claims are barred by the provisions of the NJTCA.

The plaintiff's argument that the defendants have misconstrued the complaint "as a simple tort action" is without merit.  Each of the Second through Sixth Counts of the complaint — containing the alleged New Jersey common law torts — state that the alleged conduct constitute torts "under the laws of the State of New Jersey."  (Compl., at 7-14.)  Also, below each of these allegations, the plaintiff assets that the Court "has pendent jurisdiction to hear and adjudicate said claims."  (<u>Id.</u>) Therefore, a literal reading of the complaint, even drawing all reasonable inferences in favor of the plaintiff, shows that the plaintiff appears to assert New Jersey state common law claims for false arrest, false imprisonment, assault and battery, and emotional distress.  Although the plaintiff may contend that, as part of his alleged constitutional claims, the defendants violated the Fourth Amendment by, <u>inter alia</u>, falsely arresting and falsely imprisoning him, these state common law claims cannot proceed.

The NJTCA states that "[n]o action shall be brought against a public entity or public employee under [the NJTCA] unless the claim upon which it is based shall have been presented in

accordance with the procedure set forth in this Chapter."
N.J.S.A. § 59:8-3.  Chapter 8 of the NJTCA requires a claimant to
file a Notice of Claim to allow the public entity to investigate
the merits of the claim.  Id. at § 59:8-4.  This notice must be
signed and filed with the public entity within 90 days of the
accrual of the cause of action.  Id. at § 59:8-8.  The claimant
bears the burden of proving that the claim was filed with the
appropriate public entity.  Rolax v. Whitman, 175 F.Supp.2d 720,
730 (D.N.J. 2001).

The alleged tortious acts all occurred on or before January
22, 1998.  (Compl., at 1-7.)  Because the plaintiff's claims are
against public entities and employees of the State of New Jersey,
he was required to file a Notice of Claim with each party within
90 days of the wrongful conduct.  The plaintiff has failed to
allege that he filed the required notices at all, much less
within the allotted time period.  Accordingly, the common law
torts alleged in the complaint are barred by the NJTCA.

**F.   NJLAD Claim**

The defendants assert that the plaintiff's NJLAD claim is
barred by the statute of limitations.  The applicable statute of
limitations for NJLAD claims — whose "operative facts arise after
the date of the decision" — is two years.  Montells v. Haynes,
627 A.2d 654, 658-60 (N.J. 1993).  Here, the alleged incident
occurred on January 22, 1998, and the plaintiff did not file the

complaint until March 31, 2004.  As such, the NJLAD claim is time
barred.

   **G.   Malicious Prosecution Claim**

   The defendants argue that the plaintiff cannot establish the
elements of a malicious prosecution claim.  (Defs. Br., at 18-
22.)  Specifically, the defendants contend that the plaintiff
cannot establish the (1) absence of probable cause, or (2) that
the criminal proceedings against him were terminated in his
favor.  (Id.)  The plaintiff asserts that "[t]he issue of
probable cause in the context of this case is for a jury to
decide."  (Pl. 10-7-04 Br., at 17.)  The plaintiff has not
specifically addressed the defendants' argument that he cannot
establish that the criminal proceedings against him were not
terminated in his favor.  The Court finds that the plaintiff has
not alleged a cognizable action under Section 1983 or New Jersey
state law for malicious prosecution.

   The plaintiff, to state a § 1983 claim for malicious
prosecution pursuant to the Fourth Amendment, must allege the
following elements:

> (1) the defendants initiated a criminal proceeding; (2)
> the criminal proceeding ended in plaintiff's favor; (3)
> the proceeding was initiated without probable cause; (4)
> the defendants acted maliciously or for a purpose other
> than bringing the plaintiff to justice; and (5) the
> plaintiff suffered deprivation of liberty consistent with
> the concept of seizure as a consequence of a legal
> proceeding.

Est. of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).  The

first four elements listed above comprise the New Jersey common law tort of malicious prosecution.  See Wiltz v. Middlesex County Office of the Prosecutor, No. 05-3915, 2006 WL 1966654, at *9 (D.N.J. July 12, 2006) (stating elements of New Jersey common law malicious prosecution claim).  "Failure to prove any one of these . . . elements denies the plaintiff a cause of action for malicious prosecution."  Id.

The plaintiff cannot state a claim for malicious prosecution under Section 1983 or New Jersey state law because he cannot establish a lack of probable cause.  "The record here is bereft of any evidence suggesting a lack of probable cause."  Lane, No. 02-4290 (JCL), slip op., at 10.  On the other hand, the plaintiff was found with (1) a marijuana cigarette in the ashtray in plain view, and (2) 5 pounds of marijuana packaged in small bags.  (4-26-02 Reasons for Sentence.)  The plaintiff has neither alleged that the marijuana was planted nor fraudulently produced.  See, e.g., Nieves-Robles v. N.J. Dep't of Law & Pub. Safety, No. 03-4676 (JEI), slip op., at 10-11 (D.N.J. Sept. 1, 2004) (concluding plaintiff could not establish lack of probable cause where "the simple possession of six pounds of cocaine is strong enough to negate any argument that probable cause was lacking"); Lane, No. 02-4290, slip op., at 10 ("Because Plaintiff did in fact possess the illegal drugs that formed the basis for the conviction, it is clear that an essential element of any malicious prosecution

22

claim — lack of probable cause — is entirely absent."); <u>Freeman</u> <u>v. State of N.J.</u>, 788 A.2d 867, 877 (N.J. App. Div. 2002) (affirming trial court's finding of probable cause where plaintiff was arrested on turnpike with six ounces of cocaine and five hundred Ziploc bags). Accordingly, the Court finds that the plaintiff has not alleged and cannot establish a lack of probable cause to initiate the proceedings against him.

The plaintiff also cannot establish that the prior criminal proceeding terminated in his favor. "Favorable termination within the context of a malicious prosecution claim focuses on whether the termination dispositively shows the accused to be innocent of the crime with which they were charged." <u>Nieves-</u> <u>Robles</u>, No. 03-4676 (JEI), slip op., at 10 (citations omitted); <u>see</u> <u>Hector v. Watt</u>, 235 F.3d 154, 156 (3d Cir. 2000) (stating a malicious prosecution plaintiff "must be innocent of the crime charged in the underlying prosecution"). Here, "[t]he vacation of the conviction and dismissal of the indictment can hardly be described as indicating the innocence of the accused." <u>Lane</u>, No. 02-4290, slip op., at 11. Further,

> [t]he State merely concluded [in vacating the conviction and dismissing the indictment] that in light of the presence of colorable issues of racial profiling, the interests of justice were better served by vacating the conviction rather than litigating the issue of selective enforcement, which could result in the grant of a motion to suppress key evidence. The vacation of the conviction, therefore, does not suggest that Plaintiff was innocent of the criminal charges. <u>See</u> <u>Donahue[ v.</u> <u>Gavin</u>, 280 F.3d 371, 384 (3d Cir. 2002)] ("Far from

> indicating Donahue's innocent, the nol pros merely
> reflected an informed and reasoned exercise of
> prosecutorial discretion as to how best to use those
> limited resources.").

Id.  Therefore, as the plaintiff has also not alleged and cannot demonstrate that the criminal proceedings were terminated in his favor, the plaintiff has failed to state a Section 1983 or New Jersey state law claim for malicious prosecution.

### H.  New Jersey Statutory Claim for Mistaken Imprisonment

The defendants contend that the plaintiff's claim under N.J.S.A. § 52:4C-2 for mistaken imprisonment must be dismissed because the statute only authorizes suit (1) against the New Jersey Department of the Treasury, and (2) in state court. (Defs. Br., at 23.)  The plaintiff claims that because he brought the action against the State of New Jersey, he does not need to specifically plead the Department of the Treasury as a separate defendant.  (Pl. 10-7-04 Br., at 18.)  Also, the plaintiff argues that the Court has "pendent jurisdiction over claims which may be brought in state court.  In the interests of judicial efficiency, the action pursuant to [this statute] properly has been brought in this court."  (Id.)  The Court finds that (1) a claim under N.J.S.A. § 52:4C must be brought against the Department of the Treasury, and (2) the statute does not contain an explicit waiver of the State's Eleventh Amendment immunity.

N.J.S.A. § 52:4C-2 states that "any person convicted and subsequently imprisoned for one or more crimes which he did not

commit may, under the conditions hereinafter provided, bring a suit for damages in Superior Court against the Department of the Treasury." Id. By its explicit terms, the statute only provides for a suit in state court against the Department of the Treasury.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. The Eleventh Amendment bars suits against any state or its agencies in federal court by that state's own citizen as well as by citizens of other states. Edelman v. Jordan, 415 U.S. 651, 662-63 (1974). Absent a clear waiver by a state of its sovereign immunity under the Eleventh Amendment or a congressional abrogation of that immunity, a federal court lacks jurisdiction to hear claims brought by an individual against a state. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 n.8 (1984). A state will be deemed to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." Edelman, 415 U.S. at 673 (citation omitted).

Statutory language indicating a state's consent to be sued in state courts is insufficient to constitute a waiver of its

Eleventh Amendment immunity.  <u>Fla. Dep't of Health & Rehab.</u>
<u>Servs. v. Fla. Nursing Home Ass'n</u>, 450 U.S. 147, 149-50 (1981).
Instead, a state must "make[ ] a 'clear declaration' that it
intends to submit itself [to federal court jurisdiction]." <u>Coll.</u>
<u>Sav. Bank v. Fla. Prepaid Postsec. Educ. Expense Bd.</u>, 527 U.S.
666, 675-76 (1999) (internal citation omitted).  Here, the State
has not explicitly waived Eleventh Amendment immunity for claims
brought in federal court under the N.J.S.A. § 54:C-2.  Although
the statute identifies the Department of the Treasury as a
potential defendant, and authorizes private suits "in Superior
Court," it makes no mention of federal court.  <u>See</u> <u>Atascadero</u>
<u>State Hosp. v. Scanlon</u>, 473 U.S. 234, 241 (1985) (explaining that
"a State does not consent to suit in federal court merely by
consenting to suit in the courts of its own creation").
Therefore, New Jersey has not expressly stated that it is open to
private suits under N.J.S.A. § 52:4C in federal court.

<u>**CONCLUSION**</u>

The Court finds that the plaintiff cannot maintain his
Sections 1983 or 1985 claims against the State of New Jersey,
NJSP, or the Superintendent and the Trooper Defendants in their
official capacities, because they are not "persons" under the
statutes.  The plaintiff also cannot sustain his federal claims
against the Superintendent because (1) the complaint only
includes allegations to support a theory of respondeat superior,

26

and (2) he has failed to identify which Superintendent of the NJSP allegedly violated his constitutional rights.  The Court further finds that the complaint fails to assert a cause of action under Section 1983 for violations of the First, Fifth, Sixth, and Eighth Amendments.

To the extent that the plaintiff has asserted New Jersey common law claims of false arrest, false imprisonment, assault and battery, and emotional distress, those claims are barred because he has failed to comply with the requirements of the NJTCA.  The Court will also dismiss the NJLAD claim because the plaintiff failed to file the claim within the applicable two-year statute of limitations.  Further, the plaintiff has failed to allege and cannot establish a claim for malicious prosecution under Section 1983 or New Jersey state law because he cannot show (1) a lack of probable cause, and (2) that the criminal proceedings were terminated in his favor.  Finally, the plaintiff may not maintain an action under N.J.S.A. § 52:4C-2 for mistaken imprisonment because (1) he has not named the New Jersey Department of the Treasury as a defendant, and (2) the State has not waived its sovereign immunity to be sued under this statute in federal court.  Accordingly, the Court grants the defendants' motion to dismiss.  The Court will issue an appropriate order and judgment.

    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge